# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| HORTANSIA L.<br>　　　Plaintiff,<br><br>　　　v.<br><br>ANDREW SAUL, Commissioner of the<br>Social Security Administration,<br>　　　Defendant. | )<br>)<br>)<br>) CAUSE NO.: 1:19-CV-67-JVB<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Plaintiff Hortansia L. seeks judicial review of the Social Security Commissioner's decision denying her disability benefits and asks this Court to remand the case. For the reasons below, this Court affirms the Administrative Law Judge's decision.

## OVERVIEW OF THE CASE

Plaintiff applied for disability insurance benefits under Titles II and XVI. In her application, Plaintiff alleged that she became disabled on December 14, 2009. (R. at 24.) After a hearing in 2015, the Administrative Law Judge (ALJ) found that Plaintiff suffered from the severe impairments of fibromyalgia, obesity, chronic obstructive pulmonary disorder (COPD), asthma, bipolar I disorder, depression, mood disorder, anxiety, posttraumatic stress disorder (PTSD), and attention deficit disorder. (R. at 26.) The ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 36.) The ALJ did, however, find that a number of jobs existed which Plaintiff could perform. (R. at 36-37.) Therefore, the ALJ found her to be not disabled from December 14, 2009, the alleged onset date. (R at 37.) Judge Theresa Springmann remanded the decision on November 29, 2017. (R. at 796.) The Court instructed the ALJ to explore the reasons behind Plaintiff's perceived lack of medical treatment on remand. (R. at 794.)

1

A second hearing was held in September 2018. After the 2018 hearing, the ALJ found that Plaintiff suffered from the severe impairments of fibromyalgia, myalgias/arthralgias, obesity, chronic obstructive pulmonary disease, asthma, bipolar I disorder, depressive disorder, mood disorder, anxiety disorder, obsessive-compulsive disorder, posttraumatic stress disorder, and attention deficit hyperactivity disorder (ADHD). (R. at 667.) The ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 683.) The ALJ did, however, find that a number of jobs existed which plaintiff could perform. (R. at 684.) Therefore, the ALJ found her to be not disabled from December 14, 2009, the alleged onset date. (R at 685.) This decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.)

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work;

2

and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**ANALYSIS**

Plaintiff contends that the ALJ committed two reversible errors: the ALJ failed to accommodate Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace, and the ALJ failed to consider that Plaintiff's failure to pursue medical treatment may be a symptom of her mental illness.

**A. Concentrating, Persisting, and Maintaining Pace**

Plaintiff asserts that the ALJ failed to properly accommodate her moderate limitations in concentrating, persisting, and maintaining pace in the RFC. The ALJ found that Plaintiff had the capacity to understand, remember and carry out simple instructions; make judgments on simple work-related decisions; respond appropriately to occasional interactions with supervisors and coworkers (but should avoid interactions with the general public); respond appropriately to usual work situations; and deal with changes in a routine work setting. (R. at 672.) Plaintiff agues that this does not adequately account for her moderate limitations in concentrating, persisting, or maintaining pace.

Where an ALJ does not adequately capture the Plaintiff's restrictions on concentration, persistence, and pace, the ALJ's decision will be remanded. *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2011) (emphasizing that all of Plaintiff's restrictions must be present in the hypothetical to the vocational expert). The Seventh Circuit has "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and

3

pace." *Id.* Limiting a claimant to simple, routine, and repetitive tasks limits the claimant to "unskilled work," which is "unrelated to the question of whether an individual with mental impairments—e.g., with difficulties maintaining concentration, persistence, or pace—can perform such work." *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2004).

The ALJ found that Plaintiff had moderate limitations with regard to concentrating, persisting, or maintaining pace. (R. at 671.) The ALJ noted that Plaintiff reported struggling with finishing activities she started, with following instructions, and with giving instructions. *Id.* The ALJ noted that the medical evidence showed mild to moderate problems with decision making and concentration. *Id.* Furthermore, at the hearing, Plaintiff required some questions to be repeated, "but she adequately managed to answer all questions effectively, ask her own questions, and stay to completion of the hearing." *Id.*

This case is not analogous to *Yurt* as Plaintiff asserts. In *Yurt*, the ALJ simply limited the claimant to unskilled work, which was found to be inadequate in capturing a claimant's moderate limitations in concentration, persistence, or pace. Here, the ALJ limited Plaintiff to unskilled work, but further limited her to the ability to respond appropriately to occasional interactions with supervisors and coworkers (but should avoid interactions with the general public); respond appropriately to usual work situations; and deal with changes in a routine work setting. (R. at 672.) The ALJ must simply tie the record evidence to the limitations in the RFC, regardless of the exact limitations posed in response to moderate limitations in concentrating, persisting, and maintaining pace. *Jozefyk v. Berryhill*, No. 18-1898, 2019 WL 2021615, at *4 (7th Cir. May 8, 2019). The ALJ did so here. The ALJ properly discussed the medical evidence and found that Plaintiff's long-term memory and short-term recall were intact, her judgment was intact, and she was able to recall four digits forward and three backward with incorrect sequence for immediate memory. (R. at 671-72,

678.) The ALJ also stated that she reported no problems with memory, her insight was intact, and her judgment was fair in May 2014. (R. at 678-79.) The ALJ then supported that determination with medical evidence in the record, which found that Plaintiff was cooperative and able to actively participate in therapy. *Id*. The ALJ also noted that although she had some difficulties in understanding and remembering, she generally had an intact memory and was capable of doing simple arithmetic. (R. at 679.) The ALJ also noted that Plaintiff's memory had been generally intact since February 2015. (R. at 670, 679.) The ALJ properly explained the limitations posed in the RFC and supported the decision with substantial evidence.

Plaintiff also argues that the ALJ failed to describe the quality of her interaction with others in the RFC. However, Plaintiff has offered no evidence to show that she required any limitations regarding the quality of her interactions with others. Plaintiff "bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity." *Punzio v. Astrue,* 630 F.3d 704, 712 (7th Cir. 2011). Plaintiff has not done so here. The ALJ, on the other hand, noted that Plaintiff stated that she got along "okay" with authority figures, had never been fired or laid off from a job due to difficulties getting along with others, got along well with family, and kept in touch with friends in Nebraska. (R. at 670, 274, 276.) The ALJ noted that she reported having a good relationship with her family and friends in Nebraska, but that she avoided interacting with the general public. (R. at 679.) Plaintiff also stated that she had some issues with withdrawing socially, but she was able to attend school events for her children. *Id.* The ALJ properly supported the decision with substantial evidence, and the Court will not reweigh evidence simply because Plaintiff disagrees with the ALJ's determination. Plaintiff has failed to provide medical evidence supporting her assertion that she required a more limiting RFC to accommodate her moderate limitations in interacting with others.

### B. Compliance with Treatment

Plaintiff also asserts that the ALJ improperly used non-compliance with treatment as evidence against the severity of her symptoms. An ALJ's subjective symptom analysis will be afforded "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). In addressing Plaintiff's subjective symptoms, the ALJ must consider all the evidence in the record. 20 C.F.R. § 404.1529(c)(3). It is improper for an ALJ to cite lack of compliance with a treatment regimen as a reason to distrust the Plaintiff's subjective complaints unless the ALJ explores the Plaintiff's reasons for non-compliance, including financial burden as a reason. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (an ALJ errs where he weighs a petitioner's lack of compliance with medical treatment without exploring petitioner's reasons for that lack of compliance). "[M]ental illness … may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently.") *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (listing cases).

An ALJ also cannot, without exploring the reasons therefor, draw a negative inference from a claimant's failure to obtain certain treatment, even if she has sought some treatment during the relevant time period. *See Visinaiz v. Berryhill*, 243 F. Supp. 3d 1008, 1014 (N.D. Ind. 2017) (remanding where the ALJ failed to ask Plaintiff about failure to seek more treatment when Plaintiff's only treatment was through medication that only provided "some benefit").

Here, the ALJ stated that Plaintiff's subjective statements were not "entirely consistent with the medical evidence," as her treatment was "conservative, limited, or [had] declined during

much of the alleged disability period." (R. at 679.) The ALJ noted that Plaintiff ceased mental health treatment because she did not like her provider, and she had not yet found a new therapist by the time of the hearing. *Id.*

The ALJ then provided two full paragraphs of discussion regarding her non-compliance with medical treatment. (R. at 680.) The ALJ noted that Plaintiff testified to being fearful of medication, but generally continued to see her therapist. *Id.* When asked about missed appointments, Plaintiff stated that she did not always have a good relationship with her mental health providers, and she did not like providers asking questions that were too personal. *Id.* She also stated that she sometimes forgot about appointments or was worried about taking her medication due to a fear of dying. *Id.* However, when asked why she was not seeing a counselor at the time of the hearing, she testified that she was looking for a new counselor and had yet to find one. *Id.* The ALJ concluded that Plaintiff's non-compliance with mental health treatment expanded beyond a fear of death through medication, "but ultimately, the objective evidence does not support the disabling mental health symptoms she alleges, regardless of adherence to treatment." *Id.*

With regards to her physical impairments and non-compliance, Plaintiff again stated she feared death due to medication. (R. at 680.) However, she acknowledged that her treatment was helpful and she was working with her doctors to become more compliant. *Id.* The ALJ again found that "the objective evidence, even when accounting periods of noncompliance, is inconsistent with the severity and intensity of the claimant's allegations." *Id.*

Plaintiff asserts that the ALJ failed to consider the possibility that Plaintiff's mental health impairments may intensify noncompliance. Plaintiff makes multiple arguments regarding her non-compliance as a symptom or manifestation of her mental health impairments. Specifically, she

7

focuses on the ALJ's inability to identify "the intersection of driving and mental illness" to explain why Plaintiff missed appointments. However, the Court need not delve into these arguments. The ALJ ultimately concluded that regardless of Plaintiff's adherence to treatment, the objective evidence did not support the level of symptoms she alleged. Plaintiff's argument focuses on the ALJ's reliance on non-compliance to discredit Plaintiff's subjective symptoms. However, the ALJ ultimately found that she did not need to rely on Plaintiff's non-compliance, as even during periods of compliance, the objective evidence did not support the level of symptoms that Plaintiff alleged. (R. at 680.) The ALJ did not use non-compliance to discredit Plaintiff's subjective symptoms. Since the ALJ found that she did not need to rely on Plaintiff's non-compliance, any error in discussing non-compliance is harmless.

## CONCLUSION

The ALJ did not err in determining the mental RFC or in analyzing Plaintiff's treatment noncompliance. For these reasons, the Court **AFFIRMS** the ALJ's decision.

SO ORDERED on December 19, 2019.

s/ Joseph S. Van Bokkelen<br>
JOSEPH S. VAN BOKKELEN, JUDGE<br>
UNITED STATES DISTRICT COURT